IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIDGET M. BEHR, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:14-cv-291 |
| ) | |
| v. ) | District Judge Mark R. Hornak |
| ) | |
| FEDERAL HOME LOAN MORTGAGE, ) | Magistrate Judge Lisa Pupo Lenihan |
| CORP., *et al.*, ) | |
| ) | ECF No. 4 |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' motion to dismiss the complaint (ECF No. 4) be denied.

### II. REPORT

#### A. **Factual and Procedural Background**[1]

Plaintiff Bridget M. Behr (a/k/a Bridge Marie Behr and now by marriage Bridget M. Wagner) is an individual residing at 1009 Montpelier Avenue in Erie, Pennsylvania. (Compl. ¶¶1, 29.) On September 24, 2001, Plaintiff obtained a loan from Howard Hanna Financial Services, Inc. ("Howard Hanna") secured by a mortgage on the Montpelier Avenue property. (Id. ¶¶ 1,5.) On the same date, Plaintiff executed a note and the mortgage on the property in favor Mortgage Electronic Registration Systems Inc. ("MERS") as nominee for Howard Hanna. (Id. ¶5.) The mortgage was recorded in Erie County, Pennsylvania. (Id.)

In October 2001 Defendant Federal Home Loan Mortgage Corp. (colloquial known as "Freddie Mac") became the owner of the note. (Compl. ¶6.) The mortgage was subsequently assigned by MERS

---

[1] The following background facts are taken from Plaintiff's complaint and supporting exhibits. For purposes of the pending motion, the Court accepts Plaintiff's well pled factual averments as true.

to Defendant CitiMortgage Inc. ("CMI") on November 29, 2006, and the assignment was recorded on February 6, 2007. (Id. ¶7.)

At a certain point in time, Plaintiff became unable to make payments on her mortgage. (Compl. ¶8.) After she defaulted on the loan, CMI filed a mortgage foreclosure action in the Court of Common Pleas for Erie County. (Id. ¶9.) Plaintiff subsequently filed for relief under Chapter 13 of the Bankruptcy Code, and the foreclosure action was thereby automatically stayed. (Id. ¶¶ 10-11.) When Plaintiff was unable to make payments in accordance with her Chapter 13 plan, her bankruptcy case was dismissed and the automatic stay on the foreclosure action was lifted. (Id. ¶12.) CMI, through its collection attorneys (Phelan Hallinan and Schmleg LLP), then reissued a writ of execution that had previously been entered in the foreclosure action and scheduled a sheriff's sale of the Montpelier Avenue property for October 19, 2012. (Id. ¶13.)

After receiving notice of the scheduled sheriff's sale, Plaintiff explored the possibility of filing another bankruptcy petition. (Compl. ¶¶ 14-15.) Plaintiff learned that she was eligible to commence a new bankruptcy proceeding and that such filing would automatically stay the scheduled sheriff's sale. (Id. ¶15.) Plaintiff paid her bankruptcy attorney $800 toward a bankruptcy filing and was advised about the things she needed to do in order to effectuate a new filing. (Id. ¶16.)

Around this same time, Plaintiff learned that many lenders offered loan modification or loss mitigation programs designed to restructure mortgage obligations and allow home owners to maintain their residences. (Compl. ¶17.) Shortly before the scheduled sheriff's sale, Plaintiff contacted CMI and spoke with Deborah McMillan-Wade, a homeowner support specialist. (Id. ¶18.) McMillan-Wade advised Plaintiff about information and documentation that was needed in order for Plaintiff to apply for CMI's loan modification program. (Id.) Plaintiff was also advised that no sheriff's sale would occur while the modification was under consideration. (Id.) Based on McMillan-Wade's representations, Plaintiff did not contact her attorney further to complete the bankruptcy filing, despite having sufficient time to prepare such a filing. (Id. ¶¶19-20.)

On October 18, 2012, McMillan-Wade sent a follow-up email to Plaintiff concerning their previous conversation. (Compl. ¶21; Compl. Ex. A.) As of that date, Plaintiff believed that the sheriff's sale had been postponed to a future unspecified date. (Id. ¶22.)

By letter dated October 23, 2012, McMillian-Wades send additional information to Plaintiff about the loan modification process. (Id. ¶23; Compl. Ex. B.) This correspondence stated, in relevant part, "While we consider your request, any scheduled foreclosure sale will not occur pending our determination." (Compl. Ex. B.)

Unbeknownst to Plaintiff, the sheriff's sale had gone forward as scheduled on October 19, 2012. (Compl. ¶24.) At the sale, a representative of Phelan Hallinan and Schmleg LLP placed the successful bid for the property. (Id.) The bid was subsequently assigned by Phelan Hallinan and Schmleg LLP to Freddie Mac. (Id. ¶25; Compl. Ex. C.) Plaintiff was not aware that the sale had taken place until December 2012, when she was served with a Complaint in Ejectment by Freddie Mac. (Compl. ¶ 27.)

Based on the foregoing events, Plaintiff commenced this civil action by filing a two-count complaint against Freddie Mac and CMI in the Erie County Court of Common Pleas. (Notice of Removal ¶ 1, [ECF No. 1](#).) Count I of the complaint asserts a claim against CMI for alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. ANN. §§ 201-1 *et seq.* Count II asserts a claim against Freddie Mac based on the theory that, at all relevant times, CMI was acting as Freddie Mac's agent.

The case was subsequently removed to this Court and, on December 10, 2014, Defendants filed the pending motion to dismiss the complaint for failure to state a claim upon which relief can be granted ([ECF No. 4](#)). The parties have filed their respective briefs in support of, and in opposition to, the pending motion (ECF Nos. 5, 6, 10, 11). Accordingly, the issues raised in Defendants' motion have been adequately joined and the motion is ripe for disposition.

**B. Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993 ). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit Court of Appeals has prescribed the following two-prong test for district courts evaluating whether a Rule 12(b)(6) motion should be granted:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. ... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." ... In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. ... As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" .... This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." ...

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. Aug. 18, 2009) (alterations in the original) (internal citations omitted).

Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). An exception to this rule exists whereby courts may consider, for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

In this case, both sides have submitted exhibits to support their respective legal theories. Plaintiff has appended certain documentary exhibits to her complaint which form part of the basis of her claims against the Defendants. In addition, both Plaintiff and Defendants have submitted court records from the ejection proceeding that Freddie Mac commenced in state court. All of these filings are documents that the Court can properly consider in adjudicating a Rule 12(b)(6) motion. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426. On the other hand, Plaintiff has also appended to her supplemental brief an affidavit (ECF No. 11-3), which is not appropriate for consideration at the Rule 12(b)(6) stage unless the District Court converts the Defendants' motion to dismiss into a Rule 56 motion and permits discovery. Fed. R. Civ. P. 12(d). Because this Court does not consider conversion appropriate at this juncture, the undersigned will not consider Plaintiff's affidavit for purposes of adjudicating the merits of Defendants' pending motion.

### C. Discussion

#### 1. *Plaintiff's Claim Against CMI*

Plaintiff's sole claim against CMI asserts a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. ANN. §§ 201-1 *et seq.* "The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…'" *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC,* 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (quoting 73 PA. STAT. ANN. §201-3). The UTPCPL allows a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of … [an unfair or deceptive] act or practice" which the law declares to be "unlawful." 73 PA. STAT. ANN. §201-9.2. Such unlawful acts or practices include, among other things, " any … fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* §201-2(4).

In Count I of the complaint, Plaintiff alleges that CMI engaged in an "unfair or deceptive act or practice" in that it "induced Plaintiff to believe that the Sheriff's sale would be postponed, when it was not, and such misrepresentation led Plaintiff to lose legal title to her home, and other damages as described [in the complaint]." (Compl. ¶36(b).) The "actual damages" that Plaintiff claims to have sustained include:

a. The loss of her home with a value in excess of $100,000.00, and the value of this home exceeded any amounts due on her mortgage.

b. Potential moving costs,

c. Embarrassment from the potential loss of her home,

d. Stress induced panic attacks, and

e. Attorneys['] fees.

(Compl. ¶38.)

Defendants seek dismissal of Plaintiff's UTPCPL claim in Count I based on three alleged defects. First, Defendants argue that Plaintiff has not alleged a transaction involving the "purchase or lease of goods or services" from either of them. Second, Defendants argue that Plaintiff has not asserted facts that would establish justifiable reliance on CMI's alleged misrepresentations. Third, Defendants argue that Plaintiff has not alleged an "ascertainable loss" as a result of CMI's alleged misconduct.

Defendants also seek dismissal of Count II, which asserts a claim against Freddie Mac based on the theory that, at all relevant times, CMI was acting as Freddie Mac's agent. As to Count II, Defendants argue that the complaint fails to allege factual content sufficient to establish a plausible agency relationship between CMI and Freddie Mac. Alternatively, they argue that Plaintiff's claim against Freddie Mac must be dismissed pursuant to the *Merrill* Doctrine[2] which, according to Defendants, holds that federal instrumentalities such as Freddie Mac cannot be held liable for the actions of their agents that are not expressly authorized.

---

[2] *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380 (1947).

a) "Purchase or Lease" of "Goods or Services"

Defendants' first argument is that the Plaintiff lacks standing to assert her UTPCPL claim because she has not alleged a transaction that is subject to the UTPCPL's protection. Defendants note that the UTPCPL allows a private right of action to "any person who purchases or leases goods or services… and thereby suffers any ascertainable loss of money or property…" 73 PA. STAT. ANN. §201-9.2. Defendants object that the events giving rise to Count I did not involve the purchase or lease of goods or services from Defendants. Instead, Defendants argue, Count I is based on alleged conduct leading up to the sheriff's sale which occurred nearly 11 years after Plaintiff's loan was originated.

The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices, *Bennett*, 40 A.3d at 151 (citation omitted), including those that occur in the context of residential real estate transactions. *Id.* n. 3 (*citing Growall v. Maietta*, 931 A.2d 667, 676 (Pa. Super. Ct. 2007), *appeal denied,* 951 A.2d 1164 (Pa. 2008)). The Pennsylvania Supreme Court has stated that the law should be liberally construed in order to effectuate the legislative goal of consumer protection. *Id.* at 151 (citing *Com., by Creamer v. Monumental Properties, Inc*., 329 A.2d 812, 816 (Pa. 1974)). Courts have held that "[a] plaintiff need not be in direct privity with a defendant to bring an action under the UTPCPL for the defendant's wrongful conduct." *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 547 (E.D. Pa. 2012) (citing *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 56 (3d Cir. 1992)).

In *Trunzo v. City Mortgage,* 876 F. Supp. 2d 521 (W.D. Pa. 2012), the court considered and rejected an argument similar to the one being advanced here. *Trunzo* involved two homeowners who alleged, in part, that Citi Mortgage violated the UTPCPL by referring their mortgage to foreclosure while making contemporaneous representations that the plaintiffs might be eligible for alternate mortgage payment arrangements designed to avoid the very foreclosure proceedings that Citi Mortgage had initiated. Notably, the original mortgagee, West Penn Financial, had transferred its mortgage servicing rights to Citi Mortgage approximately three years after the loan had been issued, and Citi Mortgage subsequently assigned those rights to another entity known as LBPS (referred to by the *Trunzo* Court as "Seterus"). After the plaintiffs filed suit against Citi Mortgage and Seterus, the defendants moved to

dismiss the UTPCPL claim, arguing (among other things) that the homeowners lacked standing to sue them. Citi Mortgage and Seterus reasoned that, because neither of them had been original signatories to the underlying note and mortgage, the homeowners could not allege that they had purchased any goods or services from the defendants. The court rejected the defendants' argument, reasoning that:

> the UTPCPL's reach is expansive, and, to that end, the Third Circuit in *In re Smith*, 866 F.2d 576 (3d Cir.1989) emphasized that a district court should not limit the UTPCPL's application to only those circumstances where the unfair or deceptive conduct induced the consumer to make the initial purchase. *Id.* at 583. Such a reading of the statute "would insulate all kinds of practices from the [UTPCPL], such as *debt collection*, which occur after entering an agreement and which were not a basis for the original agreement." *Id.* (emphasis added). Similarly, liability can be imposed upon a mortgage assignee under the UTPCPL provid[ed]the plaintiff advances specific allegations of wrongdoing against the assignee, not simply against the original lender. *See Murphy v. F.D.I.C.*, 408 F. App'x 609, 611 (3d Cir. 2010) (emphasizing the UTPCPL does not impose liability on a loan assignee absent claims of an assignee's wrongdoing). Homeowners assert such allegations directly against both Citi and Seterus here. Therefore, the fact that Citi and Seterus were not parties to the original mortgage is not dispositive.

876 F. Supp. 2d at 543-44. This Court finds the reasoning in *Trunzo* to be instructive in the instant case.

Defendants, on the other hand, rely on *Taylor v. Nelson*, No. Civ. A. 02-6558, 2006 WL 266052 (E.D. Pa. Jan. 31, 2006), and *Branche v. Wells Fargo Mtg. Co.*, Civil No. 1:11-CV-468, 2013 WL 5954730 (M.D. Pa. Nov. 6, 2013), neither of which is analogous to, or instructive in, the case at bar. *Taylor* involved allegations that the defendant Vintage Mortgage Corporation had violated the UTPCPL by securing a fraudulent appraisal from another party in connection with the plaintiff's efforts to secure financing for the purchase of a home that was later found to be inhabitable. The court ruled that the plaintiff lacked standing to assert a UTPCPL violation because she had "neither alleged nor proffered evidence that she purchased or leased the allegedly fraudulent … appraisal from Vintage." 2006 WL 2666052, at *9. In this case, by contrast, it can reasonably be inferred from Plaintiff's allegations that she gave value in exchange for the underlying mortgage and related services that CMI is alleged to have rendered in a fraudulent and/or deceptive manner. *See Hersh v.CitiMortgage, Inc.,* No. 2:13-cv-1344, 2013 WL 6858443, at *6 n.6 (W.D. Pa. Dec. 30, 2013) ("Our appellate court has made clear that the practice of mortgages and mortgage financing has not escaped application of the [UTPCPL] because the

8

business of mortgage lenders is the sale of a service within the scope of the [statute].")(citing *In re Smith*, 866 F.2d 576, 583 (3d Cir.1989)) (internal quotation marks omitted; alteration in the original).

Defendants' reliance on *Branche* is similarly unavailing. In that case, the plaintiff, Annette Branche, was the administrator of the estate of one Charles C. White, and she resided in property that she had inherited from Mr. White following his death. At one point, Branche filed a homeowner's insurance claim for vandalism that had occurred on the property, and defendant Wells Fargo, as the named mortgagee on the policy, became responsible for overseeing the repairs and disbursement of the insurance policy funds. A disagreement arose concerning Wells Fargo's method of disbursing the insurance funds, and the plaintiff subsequently filed a lawsuit against Wells Fargo and certain other parties, which included a claim against Wells Fargo under the UTPCPL. The district court dismissed the UTPCPL claim for lack of standing based on the fact that the plaintiff had never engaged in any "'commercial dealings'" with Wells Fargo that required her to "'give up something of significant value in order to consummate the transaction.'" 2013 WL 5954730, at *5 (quoting and distinguishing *Morgan v. World Alliance Fin. Corp.*, No. 12-4617, 2013 WL 373270 (E.D. Pa. Jan. 31, 2013)) (internal quotation marks omitted). Specifically, the court observed that Branche had never purchased mortgage services from Wells Fargo, since the underlying mortgage had been executed by the decedent, not by Branche. *Id*. Similarly, Branche could not premise her UTPCPL claim upon a December 2008 letter that Wells Fargo had issued for the purpose of outlining options for the disbursement of insurance funds; the court reasoned that this letter was not "representative of a commercial transaction" and did not set forth "an exchange of promises in return for goods or services." *Id.*

In this case, as we have noted, the Plaintiff *was* involved in commercial dealings and (it can be reasonably inferred) gave up something of significant value in order to obtain the underlying mortgage and related mortgage financing services at issue in Count I of the complaint. Although Plaintiff's original transaction was with MERS, not CMI, this distinction is of no moment. As the *Branche* Court observed, "[o]rdinarily, (a) plaintiff need not be in direct privity with a defendant to bring an action under the UTPCPL for the defendant's wrongful conduct." 2013 WL 5954730, at *4 (second alteration in the

9

original) (internal quotation marks and citation omitted). Moreover, "liability can be imposed upon a mortgage assignee under the UTPCPL," provided that "the plaintiff advances specific allegations of wrongdoing against the assignee, not simply against the original lender." *Trunzo,* 876 F. Supp. 2d at 543 (citing *Murphy v. F.D.I.C.,* 408 F. App'x 609, 611 (3d Cir. 2010)). In this case, Plaintiff has alleged wrongdoing on the part of CMI, the mortgage assignee.

In light of the persuasive reasoning in *Trunzo,* and given the UTPCPL's purpose of protecting the public from unfair or deceptive business practices as well as the Pennsylvania Supreme Court's admonition that the law should be liberally construed in order to effectuate that purpose, this Court concludes that the transaction at issue in Count I of the complaint falls within the purview of the UTPCPL, and Plaintiff otherwise has standing to assert her claim against CMI. Accordingly, it is recommended that the motion to dismiss Count I on the basis of Defendants' first argument be denied.

        b) <u>Justifiable Reliance</u>

Defendants next argue that Count I should be dismissed because the complaint fails to allege facts that would support a finding of reasonable reliance. Pennsylvania law is clear that "a plaintiff alleging violations of the [UTPCPL] must prove the common law fraud element of justifiable reliance." *Toy v. Metropolitan Life Ins. Co.,* 928 A.2d 186, 208 (Pa. 2007) (citing *Weinberg v. Sun Co., Inc.,* 777 A.2d 442 (Pa. 2001)); *see also Johnson v. MetLife Bank, N.A.,* 883 F. Supp. 2d 542, 548 (E.D. Pa. 2012) ("To succeed on a claim under the UTPCPL's catch-all provision, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.") (internal quotation marks and citation omitted). Here, Defendants contend that Plaintiff's reliance on CMI's alleged representations cannot be justified because:

- Plaintiff waited until the "eleventh hour" to contact CMI about alternative loss mitigation programs;

- although Plaintiff was allegedly informed that no sheriff's sale would occur while a loan modification application was under consideration, she does not allege that an application was in fact under consideration as of October 19, 2012, the date of the sheriff's sale;

- the October 18, 2012 email correspondence from CMI did not contain an affirmative representation that the sheriff's sale had been postponed;

- Plaintiff could have consulted her attorney in regards to the alleged representation occurred but failed to do so;

- Plaintiff or her attorney could have confirmed with the sheriff's office whether, in fact, a postponement of the scheduled sale had occurred.

(Def.s' Mem. Supp. Mot. to Dismiss Compl., ECF No. 5 at 12.)

The Pennsylvania Supreme Court has stated that justifiable reliance is typically a factual issue for the fact-finder to decide, and it requires "a consideration of the parties, their relationship, and the circumstances surrounding their transaction." *Toy*, 928 A.2d at 208 (citing *Scaife Co. v. Rockwell–Standard Corp*., 285 A.2d 451, 455 (Pa. 1971)). Based on its review of the complaint and appended exhibits, this Court is of the view that Plaintiff has pleaded facts sufficient to establish justifiable reliance. Plaintiff has alleged that, shortly before the scheduled sheriff's sale was to occur, she spoke with McMillan-Wade and was advised about the information she would need to provide in order to apply for a loan modification. This information was also set forth in an email dated October 18, 2012. According to the complaint, Plaintiff was verbally informed by McMillan-Wade that no sheriff's sale would occur while the loan modification application was being considered. Plaintiff further avers, and Complaint Exhibit "B" documents, that McMillan-Wade sent Plaintiff additional documentation about CMI's loan modification program on or about October 23, 2012, which expressly stated that "while [CMI] consider[s] your request, any scheduled foreclosure sale will not occur pending our determination." (Compl. Ex. B at p. 4, ECF No. 1 at p.30.) This same documentation from CMI stated:

> As your mortgage servicer, we want to help you stay in your home. We want you to know there is a program available that may help you. If you qualify under the federal government's Home Affordable Modification Program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

(Compl. Ex. B, at p. 1.) Moreover, the documentation indicates that the enclosed forms and required income documentation should be completed and submitted to CMI no later than November 6, 2012.

In this Court's estimation, when Plaintiff's allegations are credited and considered in light of the appended exhibits, they are sufficient to support a reasonable inference that: (a) McMillan-Wade communicated to Plaintiff that the sheriff's sale would not occur on October 19, 2012 as scheduled, and (b) Plaintiff reasonably relied on this representation in declining to file for bankruptcy prior to the scheduled sheriff's sale. Thus, the undersigned is not persuaded by Defendants' argument that Plaintiff has failed to plead justifiable reliance. To the extent the facts developed during discovery prove insufficient as a matter of law to support a reasonable finding of justifiable reliance, such deficiencies can be addressed, as appropriate, at the summary judgment stage. It is therefore respectfully recommended that the motion to dismiss Count I on this basis be denied.

### c) Ascertainable Loss

Defendants' third argument is that Count I should be dismissed because Plaintiff has failed to plead an "ascertainable loss" as required by the UTPCPL. More specifically, Defendants contend that Plaintiff's damages are premised entirely on the loss of her home, which she still occupies, making all of her damages "potential" and not "ascertainable." Alternatively, Defendants argue that Plaintiff's loss of the property resulted not from misrepresentations by McMillan-Wade, but from her own default and failure to make mortgage payments.

Pursuant to §201-9.2, a private right of action is provided to persons who suffer an "ascertainable loss of money or property… as a result of" the defendant's unlawful conduct. 73 PA. STAT. ANN. §201-9.2; *see also Weinberg v. Sun Co., Inc.,* 777 A.2d 442, 446 (Pa. 2000) (UTPCPL "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action"). The Third Circuit Court of Appeals has found persuasive the reasoning of lower state courts which have held that "'[a]scertainable loss must be established from the factual circumstances surrounding each case,'" and "that the loss must be non-speculative." *Kaymark v. Bank of Am., N.A.,* 783 F.3d 168, 180 (3d Cir. 2015)(citation omitted) (alteration in the original). "'[T]he test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic

question of whether there are identifiable damages….Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the *amount.*" *Kaymark,* 783 F.3d at 181 (quoting *Pashak v. Barish,* 450 A.2d 67, 69 (Pa. Super. Ct. 1982) (emphasis in the original). Because the loss must occur "*as a result of*" the defendant's unlawful conduct, it is clear that the "ascertainable loss" requirement also incorporates a causation element. See *Kern v. Lehigh Valley Hosp., Inc.,* 108 A.3d 1281, 1288 (Pa. Super. 2015) (noting, in dicta, the "causation requirement on the face of Section 201-9.2 that a plaintiff suffer an ascertainable loss *as a result of* a defendant's prohibited action")(emphasis in the original); *see also Weinberg,* 777 A.2d at 446 ("Nothing in the legislative history suggests that he legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation.").

     This Court finds Defendants' challenge as to the "ascertainable loss" requirement to be partially meritorious. In her complaint, Plaintiff alleges losses in the form of, among other things, the "loss of her home" and "potential moving costs." (Compl. ¶38.) Because Plaintiff concedes that she continues to reside in her home (*see* Compl. ¶1), she cannot establish "ascertainable loss" in the form of lost occupancy. Similarly, Plaintiff cannot premise any "ascertainable loss" on her "potential moving costs," as these have not yet been incurred, and may never be, depending on the outcome of the state court ejectment action. See *Benner v. Bank of Am., N.A.,* 917 F. Supp. 2d 338, 359-60 (E.D. Pa. 2013) ("While, the Pennsylvania Supreme Court mandates a liberal construction of the UTPCPL, lower court cases and the plain language of the statute indicate an *actual loss of money or property* must have occurred to state a cognizable UTPCPL claim.")(emphasis added). In addition, Plaintiff cannot establish "ascertainable loss" in the form of for her alleged "[e]mbarrassment from the potential loss of her home" and "[s]tress induced panic attacks" (see Compl. ¶38), since "'[r]ecovery for emotional distress is not permitted' under the UTPCPL." *Krista v. Equitable Life Assur. Soc.*,109 F. Supp. 2d 316, 323 (E.D. Pa. 2000) (citing *Bryant v. Woodland*, 111 B.R. 474, 479-80 (E.D. Pa.1990)). Finally, Plaintiff cannot cite her counsel fees as a form of "ascertainable loss." (*See* Compl. ¶38.) Although attorney's fees may be awarded under the

13

UTPCPL to a successful litigant, a claimant's mere acquisition of counsel does not constitute "ascertainable loss." See *Grimes v. Enterprise Leasing Co. of Phila.*, 105 A.3d 1188, 1193 (Pa. 2014).

Notwithstanding these potential pleading deficiencies, Plaintiff clarified in her brief in opposition to the pending motion that she is asserting injury based on a loss of *title* to her home.[3] This loss of ownership occurred as the immediate result of the sheriff's sale so, unlike Plaintiff's potential moving costs and potential future loss of occupancy, it is not a "forward-looking speculative" form of damages. See *Kaymark v. Bank of Am., N.A.,* 11 F. Supp. 3d 496, 499 (W.D. Pa. 2014) (plaintiff failed to plead ascertainable loss under the UTPCPL where his articulation of alleged damages was couched in "forward-looking speculative terms"), *aff'd in part and rev'd in non-relevant part,* 783 F.3d 168 (3d Cir. 2015). Consequently, this Court agrees with Plaintiff that the loss of title to her home represents an "actual loss" that is "ascertainable" and, therefore, redressable under the UTPCPL.[4]

Even if this is true, Defendants contend that Plaintiff's injury was caused not by CMI's alleged representations, but by Plaintiff's own failure to make timely mortgage payments. Thus, Defendants appear to be challenging the causation element of Plaintiff's UTPCPL claim.

This argument has some facial appeal. As noted, the UTPCPL provides relief only to plaintiffs who suffer ascertainable loss "as a result of" the defendant's unlawful conduct. 73 PA. STAT. ANN. §201-9.2. Here, Plaintiff's claim appears to be premised on the theory that, but for McMillan-Wade's misrepresentation about the supposed postponement of the sheriff's sale, Plaintiff would have filed for bankruptcy; this would have immediately stayed the scheduled sheriff's sale and potentially given Plaintiff an opportunity to obtain a modification of her loan payment plan, pay any arrearages, and

---

[3] Although Defendants accuse Plaintiff of improperly attempting to amend her UTPCPL claim in her brief, Defendants' accusation lacks merit. Plaintiff clearly alleged in her complaint that CMI engaged in "fraudulent or deceptive conduct" which induced her to believe that the sheriff's sale would be postponed when, in fact, it was not, thus leading Plaintiff "to lose legal title to her home…" (Compl. ¶36(b) (emphasis supplied).)

[4] By contrast, some of the other losses alleged in Plaintiff's complaint are probably not "ascertainable losses" within the meaning of the UTPCPL. For example, it is unlikely that Plaintiff could seek redress for her alleged embarrassment and panic attacks (*see* Compl. ¶38), since "'[r]ecovery for emotional distress is not permitted' under the UTPCPL." *Krista v. Equitable Life Assur. Soc.*, 109 F. Supp. 2d 316, 323 (E.D. Pa. 2000) (citing *Bryant v. Woodland*, 111 B.R. 474, 479-80 (E.D.Pa.1990)). Similarly, even though attorney's fees may be awarded under the UTPCPL to a successful litigant, Plaintiff cannot cite such fees as a form of "ascertainable loss." *See Grimes v. Enterprise Leasing Co. of Phila.*, 105 A.3d 1188, 1193 (Pa. 2014) (holding that the mere acquisition of counsel does not suffice to satisfy the "ascertainable loss" requirement).

thereby retain ownership and permanent occupancy of her home. Plaintiff's theory is arguably speculative to the extent it assumes that Plaintiff would not have lost title to her residence in the absence of McMillan-Wade's alleged misrepresentation; on the other hand, however, this line of inquiry involves numerous factual issues that would be better judged on a more fully developed record. *See Weinberg, 777 A.2d at 446* (holding, in the context of a putative class action, that the reliance and causation elements of a UTPCPL claim required individualized questions of fact that make class treatment inappropriate). Accordingly, it is recommended that Defendants' motion to dismiss Count I be denied without prejudice so that the Court may revisit the causation issue, if appropriate, at the Rule 56 stage.

### 2. *Plaintiff's Claim Against Freddie Mac*

Plaintiff's claim against Freddie Mac in Count II of the complaint is premised entirely upon the conduct of CMI, which allegedly acted at all relevant times as the agent of Freddie Mac. Defendants move to dismiss this claim on the grounds that: (a) the complaint contains insufficient averments of agency; and (b) the *Merrill* Doctrine prevents any finding of liability on the part of Freddie Mac.

#### a) Agency

The parties agree that, under Pennsylvania law, the basic elements of agency are as follows: (i) manifestation by the principal that the agent shall act on its behalf; (ii) the agent's acceptance of the undertaking; and (iii) the understanding of the parties that the principal is to be in control of the undertaking. *Scott v. Purcell,* 415 A.2d 56, 60 (Pa. 1980) (citing Restatement (Second) of Agency §1, Comment b (1958)). *See also Fairmont Supply Co. v. Cressman Tubular Prod. Corp.,* No. 10cv1606, 2011 WL 1327416, at *3 (W.D. Pa. Apr. 6, 2011) (citing *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.,* 357 F.3d 375, 385 (3d Cir. 2004)). To state a claim against Freddie Mac, Plaintiff must plead facts sufficient to state a plausible agency relationship between Freddie Mac and CMI. *See Twombly,* 550 U.S. at 570 (a plaintiff must plead enough facts to state a claim to relief that is "plausible on its face"). Defendants contend that the complaint fails to satisfy this standard.

In her complaint, Plaintiff alleges that Freddie Mac acquired ownership of the underlying note on October 15, 2001, CMI obtained assignment of the mortgage securing the note on November 29, 2006, and, thereafter, CMI became the servicing agent for Freddie Mac with respect to the mortgage on the Montpelier property pursuant to a written agreement which is, at yet, unavailable to Plaintiff. (Compl. ¶¶6-7, 28.) Following Plaintiff's interaction with CMI representative McMillan-Wade, the sheriff's sale went forward on October 19, 2012, as previously scheduled by CMI's collection attorneys. (Id. ¶¶13, 18, 21, 23-24.) After placing the successful bid on the Montpelier property, CMI's collection attorneys assigned the bid to Freddie Mac. (Id. ¶¶ 24-25.) Plaintiff avers that CMI acted within the scope of its authority as servicing agent for Freddie Mac when it initiated the underlying foreclosure proceedings, discussed possible loan modification measures with Plaintiff, and declined to postpone the October 19, 2012 sheriff's sale. (Id. ¶¶ 42-44.) These latter allegations are supported by Freddie Mac's answers to interrogatories in the state court ejectment action, which Plaintiff appended to her brief in opposition to the pending motion. (*See* Pl.'s Br. Opp. Mot. Dismiss, Ex. A, ECF No. 6-1.) Therein, Freddie Mac made the following judicial admissions: (i) that Freddie Mac owned Plaintiff's loan as of October 15, 2001; (ii) there was a written agreement between Freddie Mac and CMI pertaining to the servicing of Plaintiff's note and mortgage; and (iii) CMI had authority to initiate the foreclosure proceedings, to postpone the judicial sale, to discuss possible loan modification with Freddie Mac's debtors, and to provide loan modification applications to Freddie Mac's debtors. (*Id.* at Interrogatory Nos. 1,7, 11, 15-17.) Freddie Mac also acknowledged that CMI's authority as a servicer of Plaintiff's loan are governed by the terms set forth at Freddie Mac's own website, *to wit*: "http://www.freddiemac.com/singlefamily/guide." (*Id*. at Interrogatory No. 18.)[5]

---

[5] Defendants object that Plaintiff is improperly attempting to amend her pleading by citing to Freddie Mac's discovery responses. However, these responses are a matter of public record which the District Court can properly consider in connection with the pending Rule 12(b)(6) motion. *See, e.g., O'Boyle v. Braverman,* 337 F. App'x 162, 164 (3d Cir. 2009) ("[T]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.") (*quoting Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*., 181 F.3d 410, 426-27 (3d Cir.1999)). Because Plaintiff has essentially pleaded the substance of Freddie Mac's admissions in Count II of the complaint, it is respectfully recommended that, in the interest of fairness and judicial expediency, Defendants' objection in this regard be discounted.

In this Court's estimation, when the well-pled factual averments in the complaint are accepted as true and considered together with Freddie Mac's admissions in the state court ejectment action, Plaintiff has set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of" an agency relationship between CMI and Freddie Mac. *See Phillips v. Cty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008). In addition, because of the fact-intensive nature of the agency inquiry, the Third Circuit Court of Appeals has stated that discovery is often times necessary to the preparation of an agency theory argument. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir.2003); *see also USPro Coatings & Bldg. Restoration, Inc. v. DIG-HP Cherry Hill Operating, LLC*, Civil Action No. 10–1715, 2011 WL 476521, at *5 (E.D. Pa. Feb. 8, 2011). Accordingly, this Court recommends that the motion to dismiss Count II based on Defendants' argument that the complaint contains insufficient factual averments of agency be denied.

Defendants also argue that Count II must be dismissed because the UTPCPL does not allow for derivative liability. In this regard, Defendants cite *Belmont v. MB Inv. Partners, Inc.,* 708 F.3d 470, 498 (3d Cir. 2013) and *Stoudt v. Alta Fin. Mortgage,* No. 08-CV-2643, 2009 WL 661924, at *9-10 (E.D. Pa. 2009). However, this Court does not interpret either *Belmont* or *Stoudt* as supportive of the broad proposition for which those cases are cited, as neither case involved allegations of UPTCPL liability under a principal-agent relationship of the type alleged here.[6] Accordingly, the undersigned recommends

---

[6] In *Belmont,* the Court of Appeals upheld the district court's dismissal of UTPCPL claims against an executive of MB Investment Partners ("MB"), a registered investment advisor, for fraud allegedly perpetrated in connection with a Ponzi scheme. Notably, the scheme was perpetrated by one of MB's officers and directors – Mark Bloom – through a hedge fund that Bloom controlled and managed outside the scope of his responsibilities at MB. The district court dismissed the plaintiff investors' claims against the executive (Robert L. Altman) because there was no allegation that Altman had engaged in deceptive conduct within the meaning of UTPCPL's "catchall provision," 73 Pa. Stat. Ann. §201-2(4)(xxi), given that "he [was] not alleged to have had any knowledge of the [hedge fund] fraud at the time." 708 F.3d at 499. Thus, *Belmont* can fairly be read for the proposition that one executive of a partnership could not be derivatively liable for the fraudulent conduct of the partnership's officer and director, absent allegations or evidence that the executive personally "knowingly engaged in misrepresentation." *Id.* at 498 (internal quotation marks and citation omitted). Significantly, however, the Court of Appeals vacated the district court's order granting summary judgment in favor of the investment advisor; the Court concluded that "[w]hether … the Investors should have known that statements by Bloom in violation of the UTPCPL were made without MB's authority is a question for the trier of fact." *Id.* at 500. On balance, therefore, the undersigned does not interpret *Belmont* as a ruling that supports (much less mandates) a dismissal of Count II at this time.

In *Stoudt* the plaintiff alleged that she was lured into refinancing an existing mortgage with false promises of low monthly payments which turned out to be higher than her original monthly payments. In addition to suing the

that the District Court deny Defendants' motion to dismiss on this basis. To the extent that further discovery supports a finding of non-liability on Freddie Mac's part under the principles discussed in *Belmont* and *Stoudt*, the District Court can revisit the Defendants' argument at that time

        b)    The *Merrill* Doctrine

Finally, Defendants argue that Count II is barred by the *Merrill* Doctrine. According to Defendants, this doctrine holds that federal instrumentalities such as Freddie Mac cannot be held liable for the actions of their agents or their independent contractors that they have not expressly authorized. (*See* Def.s' Mem. Law Supp. Mot. to Dismiss, ECF No. 5 at p. 17, and authority cited therein.) As noted, the Third Circuit Court of Appeals has recognized the fact-intensive nature of the agency inquiry, and the reality that discovery is often necessary to the preparation of an agency theory argument. *See Jurimex Kommerz Transit G.M.B.H.,* 65 F. App'x at 808. Because the existence and/or extent of the Defendants' alleged agency relationship cannot be definitively determined at this juncture, the undersigned respectfully recommends that Defendants' motion to dismiss based on application of the *Merrill* Doctrine be denied at this time without prejudice to Defendants' right to reassert the argument at the summary judgment stage, if appropriate.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss the complaint (ECF No. 4) be denied.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto. Any party opposing such

---

mortgage refinance company and its loan officer, the plaintiff sued Citimortgage, Inc., the subsequent assignee of the loan. The court ruled that the plaintiff could not maintain a UTPCPL claim against Citimortgage under a theory of derivative liability because the alleged fraud had occurred *prior to* the assignment, Citimortgage had played no role in the solicitation, closing, or marketing of the mortgage, and there was "*no allegation of any conspiracy or any other relationship*" between Citimortgage and the other defendants, other than that of assignor/assignee. 2009 WL 661924, at *3. By contrast, Plaintiff in this case has alleged that the alleged UTPCPL violation occurred *after* Freddie Mac obtained ownership of the underlying loan and that the unlawful conduct was perpetrated by Freddie Mac's agent. Accordingly, *Stoudt* is not persuasive authority for the Defendants' "derivative liability" argument.

objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: July 29, 2015

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: All counsel of record.